**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 09-cv-01884-REB-BNB

JAMES B. BOUCHARD,

      Plaintiff,

v.

DENVER POLICE OFFICER M. WHETSTONE,
DENVER POLICE OFFICER K. JIMENEZ, and
CITY OF DENVER,

      Defendants.

---

## ORDER CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter comes before me on the **Defendants' Motion for Summary Judgment and Brief in Support** [#66][1] filed May 3, 2010.  The plaintiff filed a response [#77] and the defendant filed a reply [#83].  I grant the motion in part and deny it in part.[2]

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## II.  STANDARD OF REVIEW

      Summary judgment is proper when there is no genuine issue as to any material

---

[1]  "[#66]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2]  The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

The individual defendants, officers M. Whetstone and K. Jimenez, assert the defense of qualified immunity, and they raise that defense as one of the bases for their motion for summary judgment.  A motion for summary judgment asserting qualified immunity must be reviewed differently from other summary judgment motions.  *See*

*Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part, Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009); *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001), *cert. denied*, 535 U.S. 1056 (2002).  After a defendant asserts qualified immunity, the burden shifts to the plaintiff.  *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).  To overcome a claim of qualified immunity, the plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right).  This burden means coming forward with specific facts establishing the violation. *Taylor v. Meacham*, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.  *Albright*, 51 F.3d at 1534.  To demonstrate clearly established law, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains.  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992), *overruled in part, Williams v. City & County of Denver*, 99 F.3d 1009, 1014 - 1015 (10th Cir. 1996).  The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited.  *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that

what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615. However, the plaintiff need not establish a "'precise factual correlation between the then-existing law and the case at hand . . . .'" *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992), (quoting *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir. 1990)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations and citations omitted).

If the plaintiff satisfies both of these elements, then the burden shifts to the defendant. Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991). If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the court must grant qualified immunity. *Albright*, 51 F.3d at 1535. In short, although the court must review the evidence in the light most favorable to the plaintiff, a defendant's assertion of qualified immunity may be overcome only when the record demonstrates clearly that the plaintiff has satisfied his heavy two-part burden. In civil rights cases, a defendant's unlawful conduct must be demonstrated with specificity. *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997).

In a recent opinion, the United States Supreme Court altered somewhat the analytical process that may be used when a defendant claims the protection of qualified immunity. *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009). Under *Saucier v. Katz*, a court addressing a claim of qualified immunity first must determine whether

4

the plaintiff has adduced facts sufficient to make out a constitutional or statutory

violation.  *Saucier*, 533 U.S. at 201.   Under *Saucier*, a court must address and resolve

this first question before proceeding to the second step of the analysis, a determination

of whether the claimed constitutional or statutory right was established clearly at the

time of the alleged violation.  *Id*.  In *Pearson*, the Supreme Court held that the

sequential two step analysis mandated in *Saucier*

> should no longer be regarded as mandatory.  The judges of the district
> courts and the courts of appeals should be permitted to exercise their
> sound discretion in deciding which of the two prongs of the qualified
> immunity analysis should be addressed first in light of the circumstances
> in the particular case at hand.

*Pearson*, ___ U.S. ___, ___, 129 S.Ct. 808, 818 (2009).  The Supreme Court noted,

however, that the sequence set forth in *Saucier* often is the appropriate analytical

sequence.  *Id*.

### III.   UNDISPUTED MATERIAL FACTS

I have reviewed the defendants' statement of undisputed facts, as stated in their

motion for summary judgment [#66].  In his response [#77], the plaintiff addresses each

of the paragraphs in the defendants' statement of undisputed material facts.  Based my

review and comparison of the motion for summary judgment and the plaintiff's

response, I find that the facts described in this section are undisputed, except as noted

otherwise.

On August 9, 2008, the defendant Denver police officers, M. Whetstone and K.

Jimenez, responded to a request for a civil assist lodged by Jana Smith.  Smith sought

assistance at the residence of the plaintiff, James Bouchard.  Bouchard and Smith had

been dating for several months and Smith frequently had stayed overnight at

Bouchard's residence.  A short time before Smith called the police for a civil assist,

Smith told Bouchard that she was ending their relationship.  Smith had clothes,
toiletries, medications, and other personal property in Smith's residence.  Smith sought
the assistance of the police to retrieve her personal property from Bouchard's house.

Smith told officers Whetstone and Jimenez that she was afraid of Bouchard and
that he had firearms in his house.  In her initial call to police, she reported that she had
been living in the house for three weeks and that Bouchard was not being loud.  After
arriving at Bouchard's house, Smith told officer Whetstone that she had a key to
Bouchard's house.  *Motion for summary judgment* [#66], Exhibit A (Whetstone depo),
64:1 - 64:11.  Smith knocked on the door to the house while officers Whetstone and
Jimenez stood by.  Bouchard opened to door to talk to the trio, closed the door, and
then returned to the door with one or two bags of items that he said belonged to Smith.
Bouchard gave the bags to Smith or the police officers at his door.  Smith told the
officers that the bag or bags did not contain all of her belongings and that she had
medications in the house that were not in the bag or bags.

At this point, Bouchard became hostile and agitated as the officers tried to speak
calmly with him and to encourage him to allow Smith to obtain the rest of her
belongings.  Smith asked Officer Whetstone if Bouchard could prevent her from entering
the house if Smith had a key to the house.  Smith showed Whetstone a key.  I note that
Bouchard contends that Smith once had a key to his house but that she had returned
the key to him before this incident.  Bouchard then was told to keep the door to the
house open, but Bouchard attempted to close the door.  Whetstone says he held the
door open when Bouchard tried to close it because, based on the fact that Smith said
she had a key to the house and permission and consent to enter Bouchard's house,
Whetstone concluded that he had the right to enter the house with Smith's consent.  *Id.*,

pp. 68:18 - 69:3.  Officer Whetstone says Bouchard attempted to push Officer

Whetstone away from the door as Bouchard tried to close the door.  As the defendants

note, Bouchard says in his affidavit that he "never touched the officer."  *Response*,

Exhibit D.  Both officers then entered the house and grabbed Bouchard's arms in an

attempt to control him.  Bouchard physically resisted these efforts.  *Motion for summary

judgment* [#66], Exhibit A (Whetstone depo), 68:1 - 68:15.   The officers subdued

Bouchard and handcuffed him.   After Bouchard was restrained, Smith and a friend

entered the house and gathered Smith's other personal property.

Based on this incident, Bouchard asserts four claims against the defendants.

First, Bouchard asserts a claim under 42 U.S.C. § 1983 based on
"violations of his Constitutional rights which were perpetrated by Officers
Whetstone and Jimenez under color of law."  *Complaint* [#1], ¶ 12.
Bouchard does not specify any particular constitutional rights which he
alleges were violated.  I read this claim as a Fourth Amendment claim for
unreasonable seizure of Bouchard and for use of excessive force against
Bouchard.

Second, Bouchard asserts a claim for assault and battery, alleging that
officers Whetstone and Jimenez intended to cause offensive and harmful
contact, and made offensive and harmful contact on Bouchard, resulting in
physical injury to Bouchard.  This is a claim under state law.

Third, Bouchard asserts a claim for false arrest and illegal imprisonment,
alleging that officers Whetstone and Jimenez arrested and imprisoned him
without lawful authority.  This is a claim under state law.

Fourth, Bouchard asserts a municipal liability claim against the City of
Denver, alleging that Denver developed and maintained policies or
customs that exhibit deliberate indifference to the constitutional rights of
persons in Denver, including a custom and policy "to inadequately and
improperly investigate citizen complaints of police misconduct" and to
"inadequately supervise and train its police officers."  *Complaint*, ¶¶ 23 -
24.

### IV.  QUALIFIED IMMUNITY

Officers Whetstone and Jimenez assert the defense of qualified immunity. Under

the doctrine of qualified immunity,  government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know. ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).  To overcome this defense, the plaintiff must establish facts showing that the defendants' actions violated a constitutional or statutory right of the plaintiff, and that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.

In his response to the motion for summary judgment, Bouchard argues that the evidence in the record demonstrates a violation of his constitutional rights which precludes the entry of summary judgment on his claims and that the rights in question are clearly established.  I agree with the defendants that the Bouchard's Fourth Amendment claim must be analyzed in two stages.  First, the court must address the entry into Bouchard's residence and the seizure of Bouchard.  No search was conducted, so I view these events as seizures subject to a Fourth Amendment analysis. Second, the court must address the use of force against Bouchard.

### A.  Violation of Constitutional or Statutory Right

Citing ***Georgia v. Randolph***, the defendants argue that a police officer properly may enter a dwelling "to give a complaining tenant the opportunity to collect belongings and get out safely . . ."  547 U.S. 103, 118 (2006).  Viewing the undisputed facts in the record in the light most favorable to Bouchard, I conclude that there remain one or more disputed issues of fact about whether or not Smith properly could be viewed as a tenant simply because she had a key to Bouchard's house.  Even if I assume that Smith properly was viewed as a tenant, and even if I view the facts in the record in the light most favorable to Bouchard, I note that Smith's consent for police officers to enter the

house was not sufficient, by itself, to justify entry.   "We . . . hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph*, 547 U.S. 103, 120 (2006).  The present case involves a seizure via the entry into Bouchard's home by the defendant police officers, rather than a search.  In the context of the evidence in the record of this case, however, the difference between a seizure and a search does not alter the applicable Fourth Amendment standard.  Disputed issues of fact preclude the entry of summary judgment on Bouchard's unlawful seizure claim under § 1983.

There also are disputed issues of material fact relevant to the propriety of the use of force at issue here.  To prevail on his Fourth Amendment use of force claim, Bouchard must show (1) that a seizure occurred; and (2) that the force used in making the seizure was unreasonable.  *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 599 (1989).  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.*  (*citing Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Because police officers often are forced to make split-second judgments about the amount of force that is necessary in circumstances that are tense, uncertain, and rapidly evolving, the reasonableness of the officer's belief as to the appropriate level of force should be judged from an on-scene perspective. *Id*. at 1259-60 (*quoting Saucier*, 533 U.S. at 205 and *Graham*, 490 U.S. at 397). Ultimately, the objective reasonableness of an officer's use of force should be assessed on whether the totality of the circumstances justified the use of force, paying careful attention to the facts and circumstances of a particular case. *Id*. (*citing Sevier v. Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)).

If, ultimately, a fact finder determines that the seizures, the entry into Bouchard's house and the restraint of Bouchard, were not proper, then the justifications for the police officers' use of force against Bouchard also come into question.  If there is no lawful basis for a seizure, then use of force in executing the seizure mostly likely is unreasonable.  As the defendants acknowledge, there is a disputed issue of fact about whether or not Bouchard pushed one of the officers as Bouchard attempted to close the door.  In the context of the evidence in the record of this case, such disputed issues of fact preclude the entry of summary judgment on Bouchard's § 1983 claim concerning the defendants' use of force against Bouchard.

B.  Clearly Established Law

I conclude that the law cited above demonstrates that the rights at issue in Bouchard's § 1983 claim were clearly established *at the time* of the defendants' alleged unlawful conduct.

C.  Conclusion

Viewing the evidence in the record in the light most favorable to Bouchard, in the context of the applicable law, I conclude that a reasonable fact finder could find in favor of Bouchard on his unlawful seizure and excessive force claims under § 1983.  I conclude further that the constitutional rights at issue in Bouchard's Fourth Amendment seizure and excessive force claims were established clearly on August 9, 2008, the date on which the incident at issue occurred.  Bouchard has met the two part burden he must meet in response to the defendants' claim of qualified immunity.  Therefore, I conclude that the defendants' motion for summary judgment must be denied as to Bouchard's first claim for relief, his § 1983 claim.

**V.  STATE TORT CLAIMS**

10

Under the Colorado Governmental Immunity Act, §§24-10-101 - 24-10-120, C.R.S., a public employee, including a police officer, is immune from liability for any claim which lies in tort arising out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment, unless the act or omission was willful and wanton or occurred in a circumstance for which immunity has been waived. §§24-10-118(2)(a), 24-10-106(1), C.R.S. No waiver of immunity under the CGIA is applicable in this case. The defendants argue that the plaintiff has not alleged willful and wanton action in his state law claims, his second and third claims for relief, and that there is no evidence to support an allegation of willful and wanton conduct.

In his second claim for relief, a claim for assault and battery, Bouchard incorporates all of the previous paragraphs in his complaint and he alleges that the defendant police officers "intended to cause offensive and harmful contact and place Plaintiff in apprehension of an assault and resulting battery . . . ." *Complaint*, ¶ 14. He alleges further that the officers "made offensive and harmful contact upon Plaintiff with knowledge that the resulting contact would and did cause harm to Plaintiff." *Id.*, ¶ 15. In his third claim for relief, a claim for false arrest and "illegal imprisonment," the plaintiff incorporates all previous paragraphs in his complaint and alleges that the defendant police officers illegally arrested and imprisoned him. Under Colorado law, willful and wanton conduct includes an act or omission purposefully committed by a person "who must have realized that the conduct was dangerous, and which conduct was done heedlessly and recklessly, either without regard to the consequences, or without regard to the rights and safety of others, particularly the plaintiff." CJI-Civ. 4th 9:30 and the concomitant *Notes on Use* and *Source and Authority*.

11

I conclude that the plaintiff's allegations, although thin on this issue, sufficiently allege conduct by the defendant police officers that arguably falls within the applicable definition of willful and wanton conduct.  Further, I conclude that there are genuine issues of material fact relevant to Bouchard's second and third claims for relief, which issues preclude the entry of summary judgment on these claims.

## VI.  MUNICIPAL LIABILITY CLAIM

A plaintiff suing a municipality under § 1983 for the actions of one of its police officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.  *Jiron v. City of Lakewood*,  392 F.3d 410, 419 (10th Cir. 2004).  A municipality or other local government unit is liable for constitutional torts only if the alleged unconstitutional acts implement a policy, ordinance or custom of the local government.  *Monell v. Department of Social Services*, 436 U.S. 658, 690, 694 (1978); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 & n.4 (10th Cir. 1985).  A municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions.  *Monell*, 436 U.S. at 694;  *see also D.T. v. Independent School District*, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy).   "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823

(1985).

The City of Denver argues in the motion for summary judgment that the plaintiff has not come forward with any evidence that Denver's police use of force policy is unconstitutional, or any evidence that Bouchard was injured as a result of a custom and policy of the City of Denver inadequately and improperly to investigate citizen complaints of police misconduct and inadequately to supervise and train its police officers.  In his response to the motion for summary judgment, Bouchard does not cite any evidence in support of these contentions.  Further, he attempts improperly to shift the burden of proof on this claim away from himself and onto the City of Denver.  In his response, Bouchard argues "(t)here was no evidence taht the City atempted in any way through its officers and agents in the Denver Police Department to train or properly supervise these officers . . . ."  *Response*, p. 14.  Bouchard has not cited any evidence that demonstrates the existence of a genuine issue of material fact concerning his fourth claim for relief, his ***Monell*** claim against the City of Denver.  Viewing the evidence in the record in the light most favorable to Bouchard, no reasonable fact finder could find in favor of Bouchard on his fourth claim.  The City of Denver is entitled to summary judgment on this claim.

## VII.  CONCLUSION & ORDERS

I conclude that Bouchard has met the two part burden he must meet in response to the individual defendants' claim of qualified immunity.  Therefore, I conclude that the individual defendants' motion for summary judgment must be denied as to Bouchard's first claim for relief, his § 1983 claim.  I conclude also that, while thin, Bouchard's factual allegations and the evidence in the record are sufficient to sustain his second and third claims for relief.  Finally, viewing the evidence in the record in the light most favorable to

Bouchard, no reasonable fact finder could find in favor of Bouchard on his fourth claim for relief, his *Monell* claim against the City of Denver.  The City of Denver is entitled to summary judgment on this claim.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendants' Motion for Summary Judgment and Brief in Support** [#66] filed May 3, 2010, is **GRANTED** as to the plaintiff's fourth claim for relief, his *Monell* claim against the City of Denver;

2.  That the defendant's fourth claim for relief is **DISMISSED** with prejudice;

3.  That otherwise, the **Defendants' Motion for Summary Judgment and Brief in Support** [#66] filed May 3, 2010, is **DENIED**; and

4.  That the City of Denver is **DROPPED** as a defendant in this case, and the caption of this case is **AMENDED** accordingly.

Dated February 24, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

14